**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**WILLIAM JOSEPH HOLLY**                                        **PETITIONER**

**v.**                                                                            **No. 3:98CV53-A-A**

**STATE OF MISSISSIPPI, ET AL.**                           **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the petition of William Joseph Holly for a writ of *habeas corpus* under 28 U.S.C. § 2254.  The state has responded to the petition, and Holly has submitted a traverse.  The matter is ripe for resolution.  For the reasons set forth below, Grounds 1 through 18 of the instant petition for a writ of *habeas corpus* shall be dismissed.  In addition, the petitioner's motion to amend the instant petition to include Ground 19, which contains claims that the state violated due process and the prohibition against *ex post facto* laws, shall be granted.

**Facts**

On July 12, 1992, William Joseph Holly, with two accomplices, Tommy Benefield and Waylon Kendall, called a taxi driver for the purpose of taking both his money and his taxi.  Trial Transcript (hereinafter "T.T.") 102-103, 165, 183-185.  Holly was seventeen years old at the time, and his accomplices were fifteen and sixteen.  T.T.  101, 207.  The boys had discussed calling to order a pizza and robbing the driver of his vehicle and money, but they called a cab instead.  T.T. 165.  All were armed with handguns and were waiting in a secluded area of Grenada, Mississippi, near some railroad tracks and abandoned buildings.  T.T. 104-105.  Holly had a .45 pistol in a shoulder holster; Kendall had a 9mm pistol in his jogging pants, and Benefield had a .32 revolver.  T.T. 104-105.  Cab driver David Norwood soon arrived, and Holly, Benefield, and Kendall entered

the rear of the taxi, with Holly in middle. T.T. 104-106. As Norwood started driving away in his cab, Holly pulled a .45 pistol, aimed it at Norwood and said, "Follow my directions and nobody will get hurt." T.T. 106. Holly ordered Norwood to drive over to a wooded area, and Norwood said, "Don't kill me," and Holly assured him, "If you will just listen to what I say, nobody's got to get hurt." T.T. 107, 185-186. Holly thought about what to do, then told the two boys to retrieve a black duffel bag containing Holly's other guns and weapons from a nearby abandoned shed. T.T. 107. David Norwood again pled for his life, saying, "Don't kill me;" Holly replied, "Just listen, and it will be all right." T.T. 110.

Holly ordered Norwood to put his wallet on the hood of the car, and Norwood complied. T.T. 110. Holly then removed Norwood's driver's license and said, "Okay, I'm going to let you go. I'm just going to use this in case. If you tell on me, I'm going to come back and get you." T.T. 110. Holly put the license back on the car and said, "We're going to get you lost in these woods, and you can walk in front of me." T.T. 111. Carrying the shotgun slung over his shoulder, Holly marched David Norwood into the woods. T.T. 111-112. Holly still had the .45 pistol in the shoulder holster. T.T. 112. Kendall and Benefield were on either side of Holly. T.T. 111. After they had gone a way into the woods, Holly said, "When I say go, you start running." T.T. 112. As Norwood began running, Holly leveled the shotgun at Norwood's back and shot him just below the left shoulder, knocking him face first to the ground, mortally wounded, but still moving. T.T. 112-113, 188-189. Holly then walked up to David Norwood, pumped it to clear the empty shell and rack in a live one, aimed the shotgun at the back of Norwood's head, and pulled the trigger, killing him. T.T. 189. Holly then looked at David Norwood's body and said, "Adios amigo." T.T. 113, 190.

Holly, Benefield, and Kendall returned to the cab and Holly drove them away from the scene

in Grenada to a nearby park. T.T. 113, 190. Holly told Kendall to drive away from the park because Holly would be a better "trigger finger" if they were stopped by the police. T.T. 114. Kendall asked Holly, "How do you feel after you take someone's life?" T.T. 114. Holly shrugged. T.T. 114. He told the others to remove the identifying stickers from the vehicle, but they would not come off. T.T. 115. Holly told Kendall, "If you try to leave on me, I'll come back to Grenada and shoot your parents." T.T. 115. Kendall believed him. T.T. 115.

They stopped at a local grocery store on the way out of town, where Holly bought a six-pack of drinks and some snacks. T.T. 190. Not long after they resumed their drive, the stolen taxi overheated, and Holly told Kendall to pull into the next driveway, where they saw a couple on their front porch. T.T. 116, 191. The man on the porch helped the boys refill the radiator, but the taxi overheated again a short time later. T.T. 116-117, 191. Holly directed Kendall to pull over and park the vehicle hood-first into some brush and told Benefield to flag down a passing vehicle. T.T. 117-118, 191. First, Benefield flagged down a truck, but Holly thought he heard the driver cock a pistol and told the driver, "Never mind." T.T. 118. Then, a jeep pulled over, and the driver offered to take one of the boys to call for help, but Holly said, "No thanks. We're waiting for a tow truck." T.T. 119. Finally, a preacher pulled over in brown station wagon and gave the three boys a ride. T.T. 119, 191. A few minutes later, a police officer pulled the station wagon over. T.T. 119, 191-192. Holly and the preacher spoke with the officer, who asked about the missing cab driver then sent them on their way. T.T. 192. The preacher let the boys out a while later near Coffeeville, Mississippi. T.T. 119, 192. Soon after, the boys saw several police cars, threw their duffel bag in the bushes, and hid. T.T. 119-120.

Kendall told the others that he could reach his uncle's house and bring back an escape

vehicle.  T.T. 120, 197.  He left for his uncle's house, but he did so to escape from Holly and to report the murder.  T.T. 120, 197.  After traveling several miles through the forest, Kendall arrived at his uncle's house, but no one was home.  T.T. 120.  After a couple of hours, Kendall broke into his uncle's house and spoke to his uncle when he arrived home the next morning.  T.T. 120.  Kendall told his uncle about the murder and surrounding events, and they called Eddie Brewer, Chief of the Coffeeville Police Department, who contacted Homer Melton, the Chief Deputy Sheriff of Yalobusha County.  T.T. 120-122.  Melton took Kendall to the Grenada County Line, where Glen Willis, a deputy with the Grenada County Sheriff's Department took him into custody.  T.T. 122. Kendall then directed the authorities to the body of David Norwood.  T.T. 122-123.

After Kendall left Holly and Benefield, they stole a Yalobusha County school bus as their escape vehicle and drove it to Decatur, Illinois, where they attempted to kidnap a woman and steal her car.  T.T. 214.  She escaped, fled into a local K-Mart, and reported the incident.  T.T. 246-247. Holly and Benefield retreated to the stolen school bus as the police arrived and exchanged gunfire with the Decatur Police officers, who took the two boys into custody.  T.T. 247.

**Procedural Posture**

Holly pled guilty to attempted aggravated kidnapping and attempted first degree murder based on the events occurring in Decatur, Illinois.  He was tried in Grenada County Circuit Court on charges of capital murder (murder committed during the course of an armed robbery), kidnapping, and grand larceny based on the events occurring in Grenada County, Mississippi, on July 12, 1992. A jury returned a verdict of guilty on each charge and, after the penalty phase of the capital murder charge, returned a sentence of death.  On direct appeal, the Mississippi Supreme Court affirmed Holly's convictions and sentences on the charges of capital murder and kidnapping, but vacated the

conviction and sentence for grand larceny as a violation of the constitutional prohibition against double jeopardy. During Holly's pursuit of state post-conviction collateral relief, he raised eighteen grounds for relief. The Mississippi Supreme Court denied relief on all grounds.

In his present federal petition for a writ of *habeas corpus*, Holly seeks relief on the same grounds rejected by the Mississippi Supreme Court. After he filed his petition, the United States Supreme Court decided *Roper v. Simmons*, 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), which prohibits the execution of capital defendants who had not reached the age of eighteen years at the time they committed their capital crimes. Based upon the *Roper* decision, this court granted Holly's motion for partial summary judgment, vacated Holly's sentence of death, and remanded the case to the Mississippi Supreme Court for resentencing. Holly filed a motion to remand the case from the Mississippi Supreme Court to the Grenada County Circuit Court for resentencing, arguing that, as the only other sentence available under the capital murder statute, MISS. CODE ANN. § 97-3-21 in Mississippi on July 12, 1992, was life imprisonment *with the possibility of parole*, Holly should receive that sentence. The Mississippi Supreme Court then remanded the case to the Grenada County Circuit Court – with instructions to enter a sentence of life *without* the possibility of parole under another statute – MISS. CODE ANN. § 99-19-107. Holly now seeks to amend his petition to include the claim that his new sentence violates the constitutional prohibition against *ex post facto* laws.

### Holly's Claims for Relief[1]

Ground 1:    The aggravating circumstances used to justify the death penalty were based in part

---

[1]The court has, in the interest of clarity and brevity, paraphrased the petitioner's claims. In addition, those claims not rendered moot by vacation of the death penalty are set forth in bold to aid with ease of review.

on the guilty plea entered in Illinois for a crime occurring three days after the capital murder in Mississippi. Neither Holly nor his counsel knew how the guilty plea might be used in the Mississippi capital case, and, as such, the guilty plea in the Illinois case was not provident – and therefore not knowing and voluntary.

Ground 2: Mississippi law does not authorize imposition of the death penalty for crimes committed by juveniles. As such, imposition of the death penalty for Holly, a juvenile at the time of the capital murder) – without specific pre-trial findings regarding his maturity and moral responsibility – violated Holly's rights under the 5th, 6th, 8th, and 14th Amendments to the Constitution of the United States.

**Ground 3: The state abused its prosecutorial discretion by scheduling three capital murder trials in rural Grenada County in two months. The jury selection process eliminates illiterate citizens, those who do not own real property, and those who do not register to vote. As these people tend to be poor, the process tends to place more well-to-do people on the jury and tends to eliminate poor people. As such, Holly's jury was probably not a representative cross-section of the citizens of Grenada County, Mississippi.**

Ground 4: The trial court erred in admitting evidence of a prior felony conviction because the conviction was irrelevant, highly prejudicial, and without probative value. This evidence was offered as a aggravating circumstance to support imposition of the death penalty.

**Ground 5: Jury Instruction S-5 at the guilt phase relieved the state of the burden of proving intent to commit the felony underlying the capital conviction in violation of the Due Process clause.**

Ground 6: The petitioner's erroneous conviction of the crime of Grand Larceny resulted in

prejudice to him during the sentencing phase of the trial because it violated the constitutional prohibition against double jeopardy.  Although the Mississippi Supreme Court's decision to vacate the Grand Larceny conviction cured the error occurring in the guilt phase of trial, it did not cure the double jeopardy error regarding the penalty phase.

Ground 7:        The trial court violated Due Process in failing to ensure that the petitioner had a transcription of the trial court's recitation of the jury instructions to the jury.  The petitioner therefore could not review what was actually said to the jury and challenge the charge to the jury on direct appeal.  The petitioner seeks as relief on this ground that the court vacate the death penalty.

**Ground 8:        Aggregate error.  The petitioner seeks vacation of both his conviction and sentence based upon the effect of the following alleged errors during his trial and appeal.**

**(a)        Use of a "flight instruction" (S-8) over objection;**

**(b)        Use of hearsay testimony of Robert Kendall to bolster the testimony of Waylon Kendall;**

**(c)        Insufficiency of the evidence to prove capital murder;**

**(d)        Admission of gruesome photographs of the victim;**

**(e)        Error in failing to instruct the jury that kidnapping requires the element of asportation.**

**(f)        Death is a disproportionate sentence based upon the petitioner's unique characteristics;**

**(g)        Procedurally defaulted issues constitute ineffective assistance of counsel and should be used to reduce the petitioner's sentence to life imprisonment:**

**(1)        Presentation of underlying facts of prior felony conviction to the jury;**

      **(2)     Prosecutor's comment on Holly's failure to testify;**

      **(3)     Jury instruction S-5 relieved the state of the burden of proving intent to commit the underlying felony;**

      **(4)     Use of arbitrary factors to justify imposition of the death penalty;**

      **(5)     Sentencing instructions and state argument violated the Eighth Amendment prohibition against cruel and unusual punishment and state law by preventing the jury from considering relevant factors to mitigate against imposition of the death penalty;**

**Ground 9:    The trial court placed a time limit on closing arguments during the guilt phase;**

Ground 10:    During the penalty phase the state commented on Holly's failure to testify in violation of the 5th Amendment protections against self-incrimination;

Ground 11:    The state relied upon arbitrary factors to support imposition of the death penalty;

Ground 12:    The state submitted robbery as a aggravating circumstance, duplicating an element of the offense, and thus does not genuinely narrow the class of persons eligible for the death penalty;

Ground 13:    The sentencing instructions and the state's argument prevented the jury from considering relevant mitigating circumstances before imposing the death penalty;

Ground 14:    The sentencing instructions permitted the jury to consider as an aggravating circumstance a fact not presented to the jury:  a capital conviction in Illinois;

**Ground 15:    Prosecutorial misconduct during presentation of evidence, cross-examination of witnesses, and arguments to the jury during both the guilt and sentencing phases of the trial;**

Ground 16:    The manner of presentation of mitigating circumstances denied the petitioner the right

to a fair trial during the sentencing phase of the trial;

**Ground 17:     Ineffective assistance of counsel during the guilt phase of the trial;**

Ground 18:      Ineffective assistance of counsel during the sentencing phase of the trial;

**Ground 19:     The state violated the constitutional prohibition against *ex post facto* laws by imposing a sentence of life without parole after vacation of the sentence of death.**

## Discussion

The vacation of the death penalty in this case renders moot the following grounds for relief: 1, 2, 4, 6, 7, 10, 11, 12, 13, 14, 16, and 18.  These claims challenge only the imposition of the death penalty and are dismissed as moot.  Further, the following grounds for relief shall be dismissed due to procedural default: Ground 5 (found procedurally defaulted on direct appeal) –  and Grounds 3 and 9 (found procedurally defaulted during post-conviction collateral relief).[2]  In addition, the following grounds have been decided on the merits against the petitioner in state court and were decided reasonably in fact and law:  5, 8, 9, 15, and 17.  For the reasons set forth below, these grounds shall also be dismissed.  Finally, Ground 19 (the *ex post facto* claim) has not been sufficiently briefed.  Holly has moved to amend his current petition to include the *ex post facto* and due process claims.  The court shall grant Holly's motion to amend and shall direct the state to respond *as to this new ground for relief only* within sixty days of entry of this memorandum opinion and judgment.

---

[2]Grounds 4, 7, 10, 11, and 13 were also procedurally defaulted; however, as these grounds have been rendered moot by the vacation of the death penalty, the court will not discuss Holly's procedural default of these grounds.

## Procedural Default:  Grounds 3, 5, and 9

Holly failed to raise Ground 3 (jury venire was not a representative cross-section of the population) and Ground 9 (time limitation on closing arguments) during trial or on direct appeal; as such, he procedurally defaulted these issues in state court under MISS. CODE ANN. § 99-39-21(1) (failure to raise issue at trial or on direct appeal acts as a bar to raising the claim during state post-conviction collateral relief proceedings).   In addition, Holly did not lodge a contemporaneous objection at trial regarding Ground 5 (jury instruction S-5 relieved state of burden to prove element of intent for underlying felony); as such, he is procedurally barred from raising this ground for relief in his federal petition for a writ of *habeas corpus*.   Under the doctrine of procedural default, a federal court may not consider a state prisoner's *habeas corpus* claim when the state bases its rejection of that claim on an independent and adequate state law ground.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).   "When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case."  *Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

Section 99-39-21(1) of the Mississippi Code, which the Mississippi Supreme Court used to hold Grounds 3 and 9 to be procedurally defaulted, is an independent state procedural bar.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).   The adequacy of the procedural bar applied to Holly's issues in state court depends on "whether Mississippi has strictly or regularly applied it."  *Id.* (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)).   Holly, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims

identical or similar to those raised by the petitioner himself." *Id.* Holly has not shown "inconsistent and irregular" application of the bar, and has, therefore, defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule. *Id.* at 861.

Failure to lodge a contemporaneous objection in the trial court, which the Mississippi Supreme Court used to hold Ground 5 to be procedurally defaulted, is an independent and adequate state procedural bar. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir.1992), *see also Day v. King,* No: 1:03CV624-DMR-JMR, 2006 WL 2541600, at *4 (S.D.Miss. Aug. 31, 2006) (includes a list of Mississippi cases holding issues procedurally barred for failure to lodge a contemporaneous objection or present the issue to the trial court).

Procedural default is not, however, automatically applied; a petitioner may show why it should not be used in a certain situation.

> Federal *habeas* review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 751.

Holly argues that he should be able to overcome the procedural bar because his counsel was ineffective in failing to preserve these claims – and is thus the cause for the default under the "cause and prejudice" test. "[T]he question of cause for a procedural default [from attorney error] does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 478,

488, 106 S.Ct. 2639, 91 L. Ed. 2d 397 (1986).  As set forth below in the discussion of Ground 17 (ineffective assistance of counsel), however, Holly's defense counsel provided effective representation.  Therefore, Holly's claim that attorney error excuses his procedural default must fail.

The final means of avoiding an otherwise applicable procedural bar is the "'fundamental miscarriage of justice' exception to the general 'cause and prejudice' test."  *Lott*, 80 F.3d at 166 (quoting *Coleman*, 501 U.S. at 751, 111 S. Ct. 2546).  "This exception applies 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . .'"  *Lott,* 80 F.3d at 166 (quoting *Murray*, 477 U.S. at 496, 106 S. Ct. 2639 (holding that ineffective assistance of counsel can be cause for a procedural default)).  The AEDPA narrowed this exception.[3]  "Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the petitioner can satisfy the new 'cause and actual innocence' standard imposed by amended 28 U.S.C. § 2254(e)(2)."  *Mata v. Johnson,* 99 F.3d 1261, 1272 (5th Cir. 1996)(footnotes omitted) (quoting 28 U.S.C. § 2254(e)(2)).  As there is nothing in the record to support a claim of cause and prejudice – or actual innocence – Grounds 3, 5, and 9 shall be dismissed as procedurally defaulted.

### Reviewed on the Merits in State Court:  Grounds 5, 8, 9, 15, and 17

The Mississippi Supreme Court has already considered Grounds 5, 8, 9, 15, and 17 on the

---

[3]  Section 2254(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

merits and decided those issues against the petitioner; hence, these claims are barred from *habeas*

review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet

one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added).  The first exception, subsection (d)(1), applies to questions of law.  *Morris v.*

*Cain*, 186 F.3d 581 (5th Cir. 1999).  The second exception, subsection (d)(2), applies to questions

of fact.  *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997).  Since the petitioner's claims challenge

both the application of law and the finding of fact, this court must consider the exceptions in both

subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication

"resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly

established Federal law."  *Id.* (emphasis added).  A state court's decision is *contrary to* federal law

if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a

question of law, or if it decides a case differently from the Supreme Court on a set of "materially

indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L. Ed. 2d 389

(2000).  A state court's decision involves an *unreasonable application of* federal law if it identifies

the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 408-09, 120 S. Ct. 1495. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds 5, 8, 9, 15, and 17 of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground 5: Jury Instruction S-5 Relieved the State of the Burden of Proving the Element of Intent to Commit the Underlying Felony

At the guilt phase of Holly's trial, the court granted the state's Instruction S-5, which reads:

The court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously *doing any act which is an element of the crime* or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence beyond reasonable doubt, that the defendant, William Joseph Holly, did wilfully, knowingly, unlawfully, and feloniously *do any act which is an element of the crime(s) of capital murder, kidnaping, or grand larceny or immediately connected with them, or leading to its commission*, then and in that event, you should find the defendant guilty as

-14-

charged to that particular crime.

S.C.R. Vol. 2, Instruction C-4 (emphasis added). Holly argues that the language set forth in italics above permitted the jury to presume intent to commit the felony supporting his conviction for capital murder. Holly states, for example, "Under this construction the jury was required to find [Holly] guilty even if all they believed was the testimony of his alleged accomplices that he packed his bag for his planned trip." Holly's Petition for a Writ of *Habeas Corpus*, n. 10.

The Due Process Clause requires that the state prove each element of the charged offense beyond reasonable doubt. *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L. Ed. 2d 368 (1970). In evaluating whether a jury instruction comports with due process, the court must determine (1) whether the language of the individual instruction creates a mandatory presumption or merely a permissive inference, and (2) whether, when considering the challenged instruction in the context of the entire jury charge, the language of the instruction creates a mandatory presumption. *Francis v. Franklin*, 471 U.S. 307, 313-314, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).

The Mississippi Supreme Court considered this claim on the merits during state post-conviction collateral review and held that in light of Instruction C-4 (requiring the state to prove "every material element of the crime with which he is charged") – and S-1 (requiring the state to prove all the elements of capital murder, as well as the underlying felony of robbery) that Instruction S-5 was proper. *Holly v. State*, 716 So. 2d 979 (Miss. 1998).

Jury Instruction C-4 reads:

The law presumes every person charged with the commission of a crime to be innocent. *This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged.* Before you can return a verdict of guilty, the State must prove to your satisfaction, beyond a reasonable doubt, that the Defendant is guilty. The presumption of

innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.

S.C.R. Vol. 2, Instruction C-4 (emphasis added).

Jury Instruction S-1 reads:

The defendant, William Joseph Holly, has been charged in Count I of this indictment with the crime of capital murder. If you find from the evidence beyond reasonable doubt in this case that

    (1)     On or about July 12, 1992, the defendant, William Joseph Holly, did unlawfully, willfully, and feloniously kill David James Norwood, Jr. and

    (2)     said killing was done while the defendant, William Joseph Holly, was engaged in the crime of armed robbery,

then you shall find the defendant guilty of capital murder.

If the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty.

For you to find that the defendant, WILLIAM JOSEPH HOLLY, was engaged in the crime of armed robbery, the State must prove from the evidence beyond a reasonable doubt that;

    (1)     WILLIAM JOSEPH HOLLY on or about the 12th day of July, 1992, in Grenada County, Mississippi, did *willfully, unlawfully, and feloniously take money and money orders the personal property of Neely Cab Company and/or David James Norwood, Jr., and,*

    (2)     said taking was in the presence of, from the person of, and against the will of said David James Norwood, Jr., and was accomplished by violence to his person with a deadly weapon, and,

    (3)     at the time, *William Joseph Holly, had the intent to permanently deprive David James Norwood, Jr., of the property*,

then same would constitute the crime of armed robbery.

S.C.R. Vol. 2, Instruction S-1 (emphasis added).

Given the jury charge as a whole during the guilt phase of Holly's trial – and particularly the instructions set forth above, the court holds that the jury was charged with the duty of finding each element of each crime charged beyond reasonable doubt. Even if the challenged instruction S-5, read in isolation, relieved the state of its burden of proof as to intent, when read in conjunction with the other instructions given, the charge as a whole clearly required proof beyond reasonable doubt as to each element of the underlying offense. As such, the ruling of the Mississippi Supreme Court on this issue was neither contrary to, nor an unreasonable application of federal law, nor was it an unreasonable finding of fact based upon the evidence presented. For these reasons, the petitioner's claims in Ground 5 shall be dismissed.

### Ground 8: Cumulative Error

Holly argues that all the claims raised in the petition, in the aggregate, constitute error sufficient to entitle him to *habeas corpus* relief. To prevail on this claim, Holly must prove: (1) that his claim of cumulative error refers to actual errors, rather than mere unfavorable rulings or events; (2) that *habeas corpus* review is not procedurally barred for each error; and (3) that the errors so infected the trial that the conviction itself violates due process. *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992). Holly argues that the following alleged errors,[4] taken together, entitle him to *habeas corpus* relief:

(a)     Use of a "flight instruction" (S-8) over objection;

---

[4]The court will only discuss the alleged errors set forth in bold type – (a) through (e). The error designated as (f) has been rendered moot by the vacation of the death penalty, as have (g)(1), (g)(2), g(4), and g(5). In addition, all of the alleged errors set forth in (g)(1) - (5) have been procedurally defaulted and thus may not be considered in a cumulative error claim. *Derden*, 978 F.2d at 1458.

**(b)** **Use of hearsay testimony of Robert Kendall to bolster the testimony of Waylon Kendall;**

**(c)** **Insufficiency of the evidence to prove capital murder;**

**(d)** **Admission of gruesome photographs of the victim;**

**(e)** **Error in failing to instruct the jury that kidnapping requires the element of asportation.**

(f) Death is a disproportionate sentence based upon the petitioner's unique characteristics;

(g) Procedurally defaulted issues constitute ineffective assistance of counsel and should be used to reduce the petitioner's sentence to life imprisonment:

    (1) Presentation of underlying facts of prior felony conviction to the jury;

    (2) Prosecutor's comment on Holly's failure to testify;

    (3) Jury instruction S-5 relieved the state of the burden of proving intent to commit the underlying felony;

    (4) Use of arbitrary factors to justify imposition of the death penalty;

    (5) Sentencing instructions and state argument violated the Eighth Amendment prohibition against cruel and unusual punishment and state law by preventing the jury from considering relevant factors to mitigate against imposition of the death penalty.

None of the alleged errors in claims 8(a) through 8(e) rises to the level of infecting the entire trial to the point that trial itself violates due process. Indeed, the alleged errors rise only to the level of unfavorable rulings. In Ground 8(a), whether or not the state court granted the challenged flight instruction, that decision rests entirely upon state case law – and is thus not a viable claim in a federal *habeas corpus* proceeding. *Derden*, 978 F.2d at 1458. In addition, whether the instruction was given or not, the flight instruction only permitted the jury to infer Holly's guilt from his decision to flee. To the extent that giving the instruction was error, it was harmless. Holly himself testified

that the shotgun discharged accidentally the first time.  However, he also testified that he had to rack

another shell into the chamber before taking the second shot, and his only explanation for walking

up to David Norwood and shooting him in the head as he lay writhing on the ground was that Holly

"panicked" and "didn't want to see the man suffer."  Holly's two proffered reasons for killing David

Norwood are mutually exclusive.  An action taken in panic is accomplished in a rush and without

thought, but one taken to end suffering is a considered, deliberative act.  In any event, there is no

explanation helpful to William Joseph Holly for saying "Adios, amigo" to David Norwood's body,

as witnesses recounted during trial.  Thus, even if Holly had not fled, the evidence points directly

to his guilt.  The jury could easily have found Holly guilty without the flight instruction on the facts

of this case.  As such, any error in permitting the instruction was harmless.

In Ground 8(b) Holly argues that his trial was fundamentally unfair because the court

permitted Robert Kendall to give hearsay testimony to bolster the testimony of Holly's accomplice,

Waylon Kendall.  During the state's direct examination of Robert Kendall, the following exchange

occurred.

Q.      What did [Waylon] tell you at that time?

By Mr. Jones:          Objection to hearsay.

By the Court:          Objection is overruled.

A.      He told me that he was just escaped from Bill Holly, that he had him in his – he
        was – had him – hostage or something or other.  I don't know the exact word for
        it.

T.T. 73.  The trial court reversed its ruling and admonished the jury to disregard the hearsay

testimony.  T.T. 74.  The admission of the hearsay evidence was error, as the trial court immediately

realized, and the trial court corrected its error with an instruction to disregard the testimony.  The

testimony was neither novel nor surprising, given the later testimony of Waylon Kendall. To the extent that the testimony bolstered that of Waylon Kendall, it only served to show that he and Benefield were following Holly's lead. As Kendall and Benefield were younger than Holly, Holly owned the weapons used in the murder, Holly planned the trip to Illinois (where he used to live), and Holly himself shot David Norwood, a rational jury could easily find Holly to have been the leader of the group – even without the testimony of Robert Kendall. The court holds that the trial court's instruction to the jury to disregard the hearsay testimony was sufficient to cure the evidentiary error – and that any error was harmless.

In Ground 8(c) Holly argues that the evidence adduced at trial was insufficient to sustain a conviction for capital murder. To support this claim, Holly argues that the only evidence used to sustain the underlying felony (armed robbery) was the testimony of Holly's two accomplices, Waylon Kendall and Tommy Benefield. Holly argues that the state's case was insufficient for "lack of credible legal evidence to support a conviction on the underlying felony," citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (petitioner may obtain *habeas corpus* relief if, based upon a view of the trial record in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond reasonable doubt). Petition for a Writ of Habeas Corpus, Issue 8(c). The record in this case does not support Holly's claim. Holly's accomplices, Benefield and Kendall, testified that he was the leader of their group and, as discussed above, the evidence introduced at trial supported their testimony on this issue.

Thomas Benefield testified that William Joseph Holly had the idea to call the cab, hold up the driver, and take his money and his car. (T.T., Vol. 4, p. 184). Benefield also testified that Holly ordered David Norwood to empty his pockets and put all the money on top of the cab – and that

Holly put the money orders and cash in his pocket at the time. (T.T., Vol. 4, p.186).

Waylon Kendall testified on direct examination that, when Holly ordered David Norwood to take out his billfold, Holly took Norwood's money. (T.T., Vol. 3, p. 123). During cross-examination, however, Kendall testified that the money orders and accompanying bills were on the dashboard of the taxi. Waylon Kendall did not testify specifically regarding cash.

In Mississippi, armed robbery is defined as the felonious taking of the personal property of another, in his presence or from his person, against his will, by violence to his person or by putting him in fear of immediate injury by exhibition of a deadly weapon, with the intent to permanently deprive him of his property. MISS. CODE ANN. § 97-3-79 (Supp. 1985); *Thomas v. State*, 278 So. 2d 469 (Miss. 1973). Instruction S-9 defined "in the presence of" to mean, "A thing is in the 'presence' of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome with violence or prevented by fear, retain possession of it." As the Mississippi Supreme Court held in Holly's direct appeal, the evidence easily established that the money orders were taken from David Norwood's presence. Indeed, Holly admitted that the money orders were taken from the taxi, and both sides stipulated that the money orders were found in Holly's possession when he was arrested in Decatur, Illinois. Whether Holly himself took the money orders, or directed his accomplices to do so, the evidence was sufficient to prove Holly was a principal in the offense. As far as the inherent unreliability of accomplice testimony, the court instructed the jury to weigh accomplice testimony with "great care and caution" and to look upon such testimony "with suspicion." S.C.R., Vol. 2, Instruction DG-4. So cautioned, the jury found William Joseph Holly guilty of capital murder and the underlying felony of armed robbery. The court holds that the evidence adduced at trial was sufficient for a reasonable jury to find Holly guilty

of capital murder. As such, this ground for relief cannot be used to support a claim of cumulative error.

In Ground 8(d) Holly claims that the trial court erred in admitting photographs of the victim's body because they were not necessary evidence, but a "ploy on the part of the prosecutor to arouse the passion and prejudice of the jury," citing *McNeal v. State*, 551 So.2d 151 (Miss. 1989). Holly argues that admission of these photographs violated Mississippi Rule of Evidence 403, Article 3, § 28 of the Mississippi Constitution, and the Eighth Amendment to the federal constitution – and deprived him of a fundamentally fair trial.

First, it does not appear that copies of the photographs in question were included in the state court record submitted to the court in this case. As such, the court can hardly make a substantive ruling regarding how gruesome the photographs may be. This, however, does not prevent a ruling on the issue for the purposes of federal *habeas corpus* relief. As an initial matter, all of the authority cited in support of this issue is from state law, and "mere errors of state law are not the concern of this Court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L. Ed. 2d 187 (1993). Thus, Holly's arguments arising out of Mississippi Rule of Evidence 403 and Article 3 § 28 of the state constitution shall be dismissed. His final argument regarding this ground is that introduction of the photographs violated the Eighth Amendment prohibition against cruel and unusual punishment, but he does not explain how he arrived at that conclusion.

A rational review of the state court record leads the court to the conclusion that,

whether the photographs were introduced into evidence or not, the evidence against William

Joseph Holly in this case – including his own testimony during the guilt phase – was

overwhelming.  Evidence admitted at trial – that the jury found credible – proved that Holly

and his accomplices took David Norwood's wallet, identification, money, and money orders

by threat of deadly force, then killed David Norwood by shooting him in the back and the

back of the head with a 12 gauge shotgun as he lay on the ground.  As such, the court holds

that the jury could have found beyond reasonable doubt that William Joseph Holly was guilty

of capital murder.[5]  Holly has not shown that the rulings of the state court were an

unreasonable application of clearly established federal law; nor has he shown that the state

court interpreted the facts unreasonably in light of the evidence presented.  As such, this

argument – and the entirety of Ground 8(d) – shall be dismissed with prejudice.

In Ground 8(e), Holly argues that the trial court erred in failing to instruct the jury that the

crime of kidnaping requires the element of asportation, citing *Aikerson v. State*, 274 So. 2d 124, 128

(Miss. 1973).  The Mississippi Supreme Court in *Aikerson* held that "in order for one to be guilty

of the crime of kidnaping, the victim must be removed from a place where he had a right to be, to

another place."  *Id.*  The elements of kidnaping are set forth in MISS. CODE ANN. § 97-3-53:

> [A kidnapping occurs when a]ny person who shall without lawful authority forcibly
> seize and confine another person, or shall inveigle or kidnap any other person with
> intent to cause that person to be secretly confined or imprisoned against his or her
> will . . . .

---

[5]Although introduction of the photographs in question might have inflamed the jury
during the sentencing phase, Holly's death sentence has since been vacated and the issue – as far
as sentencing – rendered moot.

The Mississippi Supreme Court has clarified this definition of kidnaping:

Every person who shall, without lawful authority

(1) forcibly seize and confine any other,

(2) or shall inveigle or kidnap any other

(3) with intent

> (a) to cause such person to be secretly confined or imprisoned in the state against his will,

> (b) or to cause such other person to be sent out of this state against his will,

> (c) or to cause such other person

>> (1) to be deprived of his liberty,

>> (2) or in any way held to service against his will . . .

Under the statute the state must prove that a person, without lawful authority, either (1) forcibly seized and confined another person, or (2) inveigled or kidnapped another person, intending to subject such person to either (a), (b), or (c) above.

*Hughes v. State*, 401 So. 2d 1100 (Miss. 1981).

The Mississippi Supreme Court discussed this issue on direct appeal and, citing *Hughes* held that asportation is not a necessary element of the crime of kidnaping, "so long as the indictment charges the victim was imprisoned against his will." The Mississippi Supreme Court then quoted the language from Count II of the indictment charging Holly and his two accomplices with causing David Norwood to be "confined and imprisoned and deprived of his liberty against his will ," *Holly v. State*, 671 So. 2d 32, 43 (Miss. 1996), and found the issue to be without merit.

A state's interpretation of its own laws or rules is no basis for federal *habeas corpus* relief since no constitutional question is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir.

1981).  The Mississippi Supreme Court has reasonably concluded that asportation is not a necessary element of kidnapping based upon the language in the state statute and Mississippi Supreme Court precedent.  As such, this issue is not appropriate for federal *habeas corpus* review.  In any event, more than one witness testified that Holly and his accomplices forced David Norwood at gunpoint to drive his taxi to a secluded area, then marched him into the woods at gunpoint before Holly shot and killed him.  This testimony would appear to establish the element of asportation.  Therefore, Holly has not shown that the rulings of the state court were an unreasonable application of clearly established federal law; nor has he shown that the state court interpreted the facts unreasonably in light of the evidence presented.  As such, Ground 8(e) of his petition for a writ of *habeas corpus* shall be dismissed.

## Ground 9:  Limitation of the Time for Closing Argument During the Guilt Phase

Holly argues in Ground 9 that the trial court's limitation on the time for closing argument violated his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution.  As discussed above, the court cannot review this federal *habeas corpus* claim because it has been procedurally defaulted.  The Mississippi Supreme Court also, however, reviewed the merits of the claim on post-conviction collateral review during its discussion of ineffective assistance of counsel – finding both the underlying claim and the ineffective assistance of counsel claim to be without merit holding:

> In the case *sub judice*, the defense's closing arguments took approximately thirty minutes.  Even if Holly could show that the limitation in question was short enough to be unfair, he has not shown that he was prevented from presenting a portion of his argument or otherwise prejudiced.  There is no merit, therefore, to his argument or his claim of ineffective representation by counsel.

*Holly v. State*, 716 So. 2d 979, 986-87 (Miss. 1998). Holly argues that the limitation in question is "*per se* prejudicial," but he has cited no authority to support his argument, and the court knows of none. As such, Holly has not shown that the rulings of the state court were an unreasonable application of clearly established federal law; nor has he shown that the state court interpreted the facts unreasonably in light of the evidence presented. Ground 9 of the instant petition shall thus be dismissed.

### Ground 15: Prosecutorial Misconduct

Holly alleges in Ground 15 that the prosecutor engaged in egregious misconduct, denying Holly the right to due process. First, Holly argues that the following question the prosecutor posed to Holly on cross-examination was "absolutely outrageous in a capital trial or any other trial" because of its hypothetical nature: "And if you had gotten a young boy or girl out there, driving a pizza car, that's who'd have been laying there on the ground, wouldn't it?" T.T., p. 216. Similarly, Holly challenges the state's closing argument during the guilt phase: "[William Joseph Holly] would have killed anybody he had to to cover that crime up," including the preacher who picked up the boys by the side of the road, the police officer who pulled over the preacher, and the couple who gave the boys water for the leaky radiator. Holly also challenges the following reference to the question during closing arguments, "It's just like I said earlier, you could have had some kid out here delivering pizza, and he would have been dead, or she would have been dead, too." T.T., p, 239.

Holly also argues that, in the following statement, the prosecutor erroneously attributed the testimony about David Norwood's driver's license to Holly himself: "But he admitted to you hisself that he took Norwood's driver's licence, to start with, and told him, I know who you are, I'll come back and get you." T.T. 226-227. Holly also argues that the prosecutor inappropriately mentioned

the death penalty during the guilt phase of the trial.  Finally, Holly argues that the prosecutor accused defense counsel of calling him a liar.  None of these arguments has merit.

A prosecutor should not "impress on the jury that the government's vast investigatory network . . . knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty."  *Hall v. United States*, 419 F.2d 582, 583-84 (5th Cir. 1969). In closing arguments, the prosecution may discuss the evidence admitted in the case, as well as reasonable conclusions one could reach based upon that evidence.  *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008).  This ground for relief fails because, based upon testimony given at trial by several witnesses, the prosecutor's statements simply reflect the evidence given, as well as reasonable inferences one could reach from that evidence.

Waylon Kendall testified that Holly told Kendall to drive David Norwood's taxi away from the scene, "[Holly] told me to drive in case the cops or somebody like that, so he would be a better trigger finger."  T.T., p. 114.  In addition, when Waylon Kendall was asked on cross-examination why he did not flee from Holly earlier, he responded, "I could have kept on going, but I was, you know, he told me if I would try and leave him, or take off, he knew where I lived and knew where my dad works, and you know, he would get them."  T.T., p. 127.  Further, on redirect the prosecutor had this exchange with Waylon Kendall:

Q:      Why did you not tell the preacher Bill Holly had just murdered somebody?

A:      I was thinking because if I would have told him, he would have had to shoot him.

Q:      Shoot the preacher?

A:      For knowing.

Q:      For what?

A:      For knowing.

Q:      For knowing?

A:      What he did.

T. T., p. 135.

Decatur, Illinois, police officer, Michael Beck testified regarding an interview of William

Joseph Holly after his arrest there:

> [Holly] advised me on 7-12-92 at approximately 4 p.m. [Holly and his accomplices] had gone to the railroad station in Grenada. Approximately three or four hundred yards from this railroad station was an abandoned barn. He stated that he had gone to this abandoned barn and left his black duffel bag with his weapons. The three of them were speaking about a mode of transportation out of Grenada, and initially talked about calling a pizza driver for that vehicle. That plan was not followed through with. They then decided to call a taxicab driver, at which time Tommy Benefield contacted Neely Cab Company, and contacted – called them and asked them to come to that location and pick them up.

T. T., p. 165. Also, during their testimony, Holly, Kendall, and Benefield confirmed that none of

them knew David Norwood before he arrived to pick them up from the train station.

Given this testimony introduced at trial – some from Holly himself – the prosecutor's closing

arguments merely reflect facts introduced at trial – and reasonable conclusions one could draw from

those facts. In the interview Holly gave the Decatur, Illinois, police, he admitted that he and the

other two first considered calling for a pizza to steal the driver's vehicle. They decided against this

course and chose, instead, to call for a taxi. However, considering the fate awaiting David Norwood

after he arrived, and that none of the boys knew him or had a grudge against him – the prosecutor's

conclusion that Holly could have just as easily called "some kid out here delivering pizza, and he

would have been dead, or she would have been dead, too" is a reasonable inference. T.T., p. 239.

The state argued in closing that Holly could just as easily have killed the preacher; this is a

reasonable inference from Waylon Kendall's testimony that he believed Holly would have killed the preacher if he had found out about the murder – to cover up Holly's involvement in the murder. T. T., p. 135. Likewise, Kendall testified that Holly claimed to be the better "trigger finger" if the police or someone else stopped them. T. T., p. 114. Given the testimony of these witnesses at trial, the prosecutor's statement that Holly would have killed anybody to cover up the murder was a reasonable conclusion. Finally, Holly argues that the prosecutor incorrectly attributed Waylon Kendall's description of Holly using David Norwood's driver's license and threatening to return should Norwood tell the authorities. Although the prosecutor misspoke, he only did so as to who testified to those facts. As the jury witnessed all of the testimony in the case, the prosecutor's comments, though erroneous, constituted at most harmless error. In sum, the prosecutor's statements during closing reflected the facts introduced at trial – and made reasonable conclusions based upon those facts.

Holly also claims error when the prosecutor stated at least three times that it was premature to consider the death penalty during the guilt phase of the trial. Holly argues that the prosecutor was implying that the jury knew Holly should die, so they should find him guilty first. He also finds fault with the prosecutor for accusing defense counsel of calling him a liar when defense counsel, during closing argument, stated that Holly's codefendants had been offered a deal from the prosecutor to testify. Holly argues that these actions by the prosecutor are the same as the prosecutor having testified in the case.

The burden in seeking to overturn a conviction for improper remarks by the prosecution is substantial. *United States v. Diaz-Carreon,* 915 F.2d 951, 956 (5th Cir.1990). Remarks by the prosecutor – without more – are seldom sufficient to warrant reversal. *United States v. Iredia,* 866

F.2d 114, 117 (5th Cir.), *cert. denied,* 492 U.S. 921, 109 S. Ct. 3250, 106 L. Ed. 2d 596 (1989). To

warrant overturning a conviction, the comments must not only be inappropriate but also "affect

substantially the defendant's right to a fair trial." *United States v. Murrah,* 888 F.2d 24, 27 (5th

Cir.1989).

When the court finds that a prosecutor's remarks constitute error, the court must analyze their

effect on the petitioner's substantial rights, considering: "(1) the magnitude of the statement's

prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of

the defendant's guilt." *United States v. Tomblin,* 46 F.3d 1369, 1389 (5th Cir.1995). Under this

standard, the court holds that the prosecutor's statement during closing arguments that defense

counsel called him a liar, although bad form, does not rise to the level of error, and even if it did, the

prejudice to Holly's case was small – and outweighed by the overwhelming evidence of his guilt as

discussed in the section above regarding sufficiency of the evidence.

The prosecutor's comments regarding the death penalty during closing arguments on the guilt

phase were merely a caution against considering the penalty for capital murder prematurely – that

there is another phase of the trial devoted exclusively to the penalty upon a finding of guilt for capital

murder – and that the jury need not concern themselves with what penalty Holly might face unless

and until the trial reached that phase. T.T., p. 227. Likewise, the prosecutor's mention of the death

penalty was balanced by the several times defense counsel discussed the death penalty during his

closing argument. T.T., pp. 229, 231, 233, 237. Certainly the jury knew that the death penalty was

an option, as they were questioned extensively on the matter during *voir dire*. As such, the court

holds that the prosecutor's mention of the death penalty did not rise to the level of error, and, even

if could be held as error, it was harmless in light of the overwhelming evidence of Holly's guilt. For

these reasons, Holly has not shown that the rulings of the state court were an unreasonable application of clearly established federal law; nor has he shown that the state court interpreted the facts unreasonably in light of the evidence presented. For these reasons, the claims of prosecutorial misconduct in Ground 15 shall be dismissed.

**Ground 17: Ineffective Assistance of Counsel
During the Guilt Phase of Trial**

Holly argues in Ground 17 that the following claims show either plain error or that counsel was ineffective: Grounds 1, 2, 4, 5, 7, 8, 9, 10, 11, 13, 15, 16, and 18. As discussed earlier in this opinion, however, the following grounds for relief pertain only to Holly's sentence and are thus moot because his death sentence has been vacated: Grounds 1, 2, 4, 7, 10, 11, 13, 16, and 18. As such, the court will only discuss the following grounds for relief in terms of ineffective assistance of counsel:

**Ground 5:**      Jury Instruction S-5 at the guilt phase relieved the state of the burden of proving intent to commit the felony underlying the capital conviction in violation of the Due Process clause.

**Ground 8:**      Aggregate error;

**Ground 9:**      The trial court placed a time limit on closing arguments during the guilt phase;

**Ground 15:**      Prosecutorial misconduct during presentation of evidence, cross-examination of witnesses, and arguments to the jury during both the guilt and sentencing phases of the trial.

To prove that counsel provided ineffective assistance, Holly must show first that counsel's performance was deficient, and, second that the deficient performance caused prejudice to his legal position. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that

counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687, 104 S. Ct. 2052. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052 (citation omitted). To prove prejudice, Holly must demonstrate that the result of the proceedings would have been different – or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S. Ct. 557, 133 L. Ed. 2d 458 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

The court has discussed the substance of these remaining ineffective assistance of counsel claims (Grounds 5, 8, 9, and 15) and found them to be without merit. As the underlying claims are without merit, counsel's failure to explore them, preserve them, or object to them cannot be error. *Clark v. Collins*, 19 F.3d 959 (5th Cir. 1994). As such, the petitioner's claims of ineffective assistance of counsel shall be denied.

**Holly's Motion to Amend to Include Ground 19**
**(Claims of Ex Post Facto and Due Process Violations)**

Holly has moved to amend his petition to include claims that the state violated his right to due process and the constitutional prohibition against *ex post facto* laws. On March 24, 2006, this Court granted Holly's motion for partial summary judgment and vacated the state's imposition of the death penalty based upon the Supreme Court's ruling in *Roper v. Simmons*, 543 U.S. 551, 578, 125 S.Ct. 1183 (2005) that imposition of the death penalty for crimes committed by persons younger

than eighteen years violates the Eighth Amendment prohibition against cruel and unusual punishment, as applied to the states through the Fourteenth Amendment. The Court remanded the case to the Mississippi Supreme Court for resentencing. Holly then moved for the supreme court to remand the case back to the Circuit Court of Grenada County, Mississippi, with instructions to sentence Holly to life imprisonment with the possibility of parole, the only possible sentence remaining under the version of Mississippi's capital murder statute in effect when Holly committed capital murder. MISS. CODE ANN. § 97-3-21 (1974). The new version of § 97-3-21 includes life without parole as a possible sentence, but that version did not take effect until 1994, two years after Holly committed his crimes. Holly argued in his motion that the imposition of a sentence of life without the possibility of parole would violate both the Ex Post Facto and Due Process Clauses of the United States Constitution.

The Mississippi Supreme Court then remanded the case to the Grenada County Circuit Court with instructions to enter a sentence of life imprisonment without parole in accordance with MISS. CODE ANN. § 99-19-107. The supreme court discussed neither Holly's *ex post facto* nor his due process claims. The Grenada County Circuit Court then imposed a sentence of life without parole, as directed by the Mississippi Supreme Court.

Holly has moved to amend his current petition to include the *ex post facto* and due process claims. The court shall grant Holly's motion to amend and shall direct the state to respond *as to this new ground for relief only* within sixty days of entry of this memorandum opinion and judgment.

### Conclusion

For the reasons set forth above:

(1)     Grounds 1, 2, 4, 6, 7, 10, 11, 12, 13, 14, 16, and 18 of the instant petition for a writ of *habeas*

*corpus* shall be dismissed as moot in light of the court's previous vacation of William Joseph Holly's death sentence;

(2)      Grounds 3, 4, 5, 7, 9, 10, 11, and 13 of the instant petition for a writ of *habeas corpus* shall be dismissed under the doctrine of procedural default;

(3)      Grounds 5, 8, 9, 15, and 17 of the instant petition for a writ of *habeas corpus* shall be dismissed, as the state supreme court has already decided these issues on the merits against William Joseph Holly, and the decisions were not contrary to, or an unreasonable application of federal law, nor did they involve an unreasonable determination of the facts in light of the evidence presented;

(4)      William Joseph Holly's motion to amend his petition to include *ex post facto* and due process claims shall be granted and the state is directed to respond by separate order.

A judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED**, this the ___29th___ day of September, 2009.

   **/s/ Sharion Aycock**
   **U. S. DISTRICT JUDGE**