# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**WILLIAM JOSEPH HOLLY**                                                                   **PETITIONER**

**v.**                                           **No. 3:98CV53-A-A**

**STATE OF MISSISSIPPI, ET AL.**                                         **RESPONDENTS**

## MEMORANDUM OPINION

On March 24, 2006, this court granted William Joseph Holly's motion for partial summary judgment and vacated the state's imposition of the death penalty based upon the Supreme Court's ruling in *Roper v. Simmons*, 543 U.S. 551, 578, 125 S.Ct. 1183 (2005) that imposition of the death penalty for crimes committed by persons younger than eighteen years violates the Eighth Amendment prohibition against cruel and unusual punishment, as applied to the states through the Fourteenth Amendment. The court remanded the case to the Mississippi Supreme Court for resentencing. Holly then moved for the Mississippi Supreme Court to remand the case to the Circuit Court of Grenada County, Mississippi, with instructions to sentence him to life imprisonment with the possibility of parole, which – Holly argued – was the only possible sentence remaining under the version of Mississippi's capital murder statute in effect when Holly committed capital murder. MISS. CODE ANN. § 97-3-21 (1974). The present version of § 97-3-21 includes life without parole as a possible sentence, but that version did not take effect until 1994, two years after Holly committed his crimes. On remand, Holly also argued to the Mississippi Supreme Court that he should not be sentenced under another statute, MISS. CODE ANN. § 99-19-107, which requires imposition of a sentence of life without the possibility of parole "[i]n the event the death penalty is held to be unconstitutional by the

Mississippi Supreme Court or the United States Supreme Court."

In 1977, some 15 years before Holly committed his crimes, the State of Mississippi enacted MISS. CODE ANN. § 99-19-107, which stated:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life , and such person shall not be eligible for work release or parole.

Miss. Laws, 1977, Ch. 458, Section 5. This statute was amended in 1982 to strike the words "work release or." Thus, in 1992, when Holly committed the crimes of his conviction, the statute read:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life , and such person shall not be eligible for parole.

MISS. CODE ANN. § 99-19-107.

Holly argued in his motion before the Mississippi Supreme Court that the imposition of a sentence of life without the possibility of parole would violate both the *Ex Post Facto* provision in Article 1, Section 10 of the United States Constitution, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments. The Mississippi Supreme Court then remanded the case to the Grenada County Circuit Court with instructions to enter a sentence of life imprisonment *without* parole in accordance with MISS. CODE ANN. § 99-19-107. The Mississippi Supreme Court discussed neither Holly's *ex post facto* claim nor his due process claim. The Grenada County Circuit Court then imposed a sentence of life without parole, as directed by the Mississippi Supreme Court. Holly has moved to amend his current petition to include the *ex post*

*facto* and due process claims. The court will grant Holly's motion to amend – and consider these claims. As discussed below, the state's use of MISS. CODE ANN. § 99-19-107 to impose a sentence of life without the possibility of parole was proper. As such, Holly's petition for a writ of *habeas corpus* on this final ground will be denied.

## Holly's Arguments

*Ex post facto* laws arise, by definition, from legislative action. *Calder v. Bull*, 3 U.S. 386, 1798 WL 587 (1798). Holly's argument in this case is that the Mississippi Supreme Court's interpretation of MISS. CODE ANN. § 99-19-107 in *Foster v. State*, 961 So.2d 670 (Miss. 2007) operates in the same way as an *ex post facto* law, reaching back in time to impose a harsher range of punishment than that which existed at the time of the crime. To be more precise, Holly argues that the retroactive application of the Mississippi Supreme Court's 2007 interpretation of MISS. CODE ANN. § 99-19-107 violates his right to due process. While the mere enactment and application of a criminal statute does not constitute an *ex post facto* claim, a novel and surprising judicial interpretation of a plainly written criminal statute, applied retroactively, can rise to the level of a due process violation. *Bouie v. City of Columbia*, 378 U.S. 347, 362, 84 S.Ct. 1697 (1964). Holly argues that the Mississippi Supreme Court violated his right to due process by applying § 99-19-107 in this way to sentence him to life without the possibility of parole. Based upon this argument, Holly believes that § 99-19-107 does not apply to him – and that he should be sentenced, instead, under MISS. CODE ANN. § 97-3-21 (as it existed in 1992) to imprisonment for life.

### The Respondents' Arguments

The respondents set forth four arguments against Holly's claim of an *ex post facto* or due process violation:

(1)　MISS. CODE ANN. § 99-19-107 became effective in 1977, many years before Holly committed his crimes – and thus cannot constitute an *ex post facto* violation;

(2)　Federal courts lack jurisdiction to interpret state legislation, which is the sole province of the State Supreme Court; thus, as states may interpret and reinterpret their own statutes as they see fit, this court may not interpret a statute in a contrary manner;

(3)　Holly cannot argue that the ruling in *Foster v. State*, 961 So.2d 670 (Miss. 2007) was novel or surprising, as the Mississippi Supreme Court has resentenced three people to life without parole after their death sentences were vacated during federal *habeas corpus* proceedings. *See McGilberry v. State*, 741 So.2d 894 (Miss. 1999), *Eskridge v. State*, 765 So.2d 508 (Miss. 2000), and *Blue v. State*, 674 So.2d 1184 (Miss. 1996); and

(4)　The State may apply MISS. CODE ANN. § 99-19-107 to impose a sentence of life without parole. Holly's sentence was not vacated due to a defect in the evidence presented or process used to convict him; instead, the United States Supreme Court held that an entire class of persons (those who committed capital crimes before reaching the age of eighteen years) simply cannot be executed under any circumstances. *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Thus, although the death penalty was not invalidated as to *all* persons by the decision in *Roper*, it *was* invalidated for an entire *class* of persons, including Holly. Therefore, the Mississippi Supreme Court's judicial construction of MISS. CODE ANN. § 99-19-107 was neither unexpected nor indefensible "by reference to the law which had been expressed prior to

the conduct at issue,'" and it may be given retroactive effect. *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S.Ct. 1697 (1964), *citing* Hall, *General Principles of Criminal Law*, (2d. ed., 1960), at 61.

## History and Definition of *Ex Post Facto* Laws

The seminal case regarding *ex post facto* laws is *Calder v. Bull*, 3 U.S. 386, 1798 WL 587 (1798). In that case, Justice Chase first discussed the limitations of government power based on republican principles, then the history of abuse of power by virtue of *ex post facto* laws, and finally, the definition of *ex post facto* law. He wrote these words at a point close in time to the American Revolution – and to the adoption of the United States Constitution. Having recently broken free from the yoke of tyranny of the British Crown, Americans' memories of the abuses of that government were still fresh.

On the source and limitations of state and federal government power, Justice Chase wrote:

> The people of the United States erected their Constitutions, or forms of government, to establish justice, to promote the general welfare, to secure the blessings of liberty; and to protect their persons and property from violence. The purposes for which men enter into society will determine the nature and terms of the social compact; and as they are the foundation of the legislative power, they will decide what are the proper objects of it: The nature, and ends of legislative power will limit the exercise of it. *This fundamental principle flows from the very nature of our free Republican governments, that no man should be compelled to do what the laws do not require; nor to refrain from acts which the laws permit. There are acts which the Federal, or State, Legislature cannot do, without exceeding their authority.*
>
> . . .
>
> The obligation of a law in governments established on express compact, and on republican principles, must be determined by the nature of the power, on which it is founded. A few instances will suffice to explain what I mean. A law that

punished a citizen for an innocent action, or, in other words, for an act, which, when done, was in violation of no existing law; a law that destroys, or impairs, the lawful private contracts of citizens; a law that makes a man a Judge in his own cause; or a law that takes property from A. and gives it to B: *It is against all reason and justice, for a people to entrust a Legislature with SUCH powers; and, therefore, it cannot be presumed that they have done it.* The genius, the nature, and the spirit, of our State Governments, amount to a prohibition of such acts of legislation; and the general principles of law and reason forbid them. *The Legislature may enjoin, permit, forbid, and punish; they may declare new crimes; and establish rules of conduct for all its citizens in future cases; they may command what is right, and prohibit what is wrong;* **but they cannot change innocence into guilt; or punish innocence as a crime; or violate the right of an antecedent lawful private contract; or the right of private property.** *To maintain that our Federal, or State, Legislature possesses such powers, if they had not been expressly restrained; would, in my opinion, be a political heresy, altogether inadmissible in our free republican governments.*

*Calder,* 3 U.S. at 388 (emphasis added).

Then, the Court turned to the historical abuses of government power exercised against British citizens as the source of the prohibition against *ex post facto* laws:

All the restrictions contained in the Constitution of the United States on the power of the State Legislatures, were provided in favour of the authority of the Federal Government. The prohibition against their making any ex post facto laws was introduced for greater caution, and very probably arose from the knowledge, that the Parliament of Great Britain claimed and exercised a power to pass such laws, under the denomination of bills of attainder, or bills of pains and penalties; the first inflicting capital, and the other less, punishment.[1] These acts were legislative judgments; and an exercise of judicial power. Sometimes they respected the crime, by declaring acts to be treason, which were not treason, when committed, at other times, they violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit; at other times they inflicted punishments, where the party was not, by law, liable to any punishment; and in other cases, they inflicted greater punishment, than the law annexed to the

---

[1] A bill of attainder is a law passed by the legislature requiring the execution of a person for engaging in an act which was permissible when it was done. It is the ultimate violation of due process. A bill of pains and penalties is a legislative act calling for the punishment (less than death) of a person for engaging in an act which was permissible when it was done.

offence. The ground for the exercise of such legislative power was this, that the safety of the kingdom depended on the death, or other punishment, of the offender: as if traitors, when discovered, could be so formidable, or the government so insecure! With very few exceptions, the advocates of such laws were stimulated by ambition, or personal resentment, and vindictive malice. To prevent such, and similar, acts of violence and injustice, I believe, the Federal and State Legislatures, were prohibited from passing any bill of attainder; or any ex post facto law.

*Calder,* 3 U.S. at 389 (emphasis added).

Then, having shown the sources and limitations of government power, as well as many historical abuses of that power, the Court defined *ex post facto* law:

I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. 1st. Every law that makes an action , done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive. In my opinion, the true distinction is between ex post facto laws, and retrospective laws. Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law: The former, only, are prohibited.

. . .

But I do not consider any law ex post facto, within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or encrease the punishment, or change the rules of evidence, for the purpose of conviction.

*Calder,* 3 U.S. at 390-391 (emphasis added). Justice Chase's definition of *ex post facto* law is still cited with approval today, more than two centuries later. Only the prohibition against changing the rules of evidence to require a lower quantum of proof has been removed from the definition during that time. *See, e.g., Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922 (1898);

*Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290 (1977).

## "*Ex Post Facto*" Laws Arising Out of Judicial Interpretation of Statute – A Due Process Claim

Generally, *ex post facto* laws originate from state or federal criminal legislation that is applied retroactively. The law in question in this case, however, arose via a judicial interpretation of a clearly expressed existing statute – MISS. CODE ANN. § 99-19-107 – a statute enacted some fifteen years before Holly committed his crimes. The statute allows for the resentencing of those condemned to death "[i]n the event *the death penalty* is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court . . . ." MISS. CODE ANN. § 99-19-107 (emphasis added). As the statute was enacted long before Holly committed his crimes, its enactment and later use could not, by themselves, trigger a valid *ex post facto* claim. In 1992, the Mississippi Supreme Court decided *Abram v. State*, 606 So.2d 1015 (Miss. 1992), which interpreted MISS. CODE ANN. § 99-19-107 according to its plain meaning, holding that § 99-19-107 applied only in the case when the death penalty itself – or the state's implementation of it – was declared unconstitutional, and should not be applied on a case-by-case basis when an individual death *sentence* was determined to be unconstitutional. However, in 2007, about fourteen years *after* Holly committed his crimes, the Mississippi Supreme Court decided *Foster v. State*, 961 So.2d 670 (Miss. 2007), holding that the § 99-19-107 applied in the event that *an individual death sentence* (rather than the death penalty in general) was overturned on constitutional grounds.

In 1977, because of the uncertainty regarding the constitutionality of the death penalty generally – and Mississippi's capital murder statutes – the state enacted MISS. CODE ANN. § 99-

19-107, which reads:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life, and such person shall not be eligible for parole.

The state enacted § 99-19-107 in an effort to ensure that capital offenders would face life without parole if the death penalty in general – or Mississippi's capital murder sentencing scheme in particular – were held to be unconstitutional. The proximity of § 99-19-107 to the United States Supreme Court decisions calling into question the very validity of the death penalty itself – and various state statutory schemes for imposing the death penalty – make the reasons for the statute's enactment clear. *See Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726 (1972) (invalidating a death penalty statutory scheme giving unfettered discretion to a judge or jury to determine whether to sentence a defendant to death); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909 (1976); *see also,* Marvin L. White, Jr., 4 The Encyclopedia of Mississippi Law, § 27:1 (Jeffrey Jackson & Mary Miller, eds., Supp. 2008).

Indeed, the Mississippi Supreme Court so held in *Abram v. State*, 606 So.2d 1015, 1039 (Miss. 1992)[2]. Abram was convicted of capital murder and sentenced to death. *Id.* at 1019. On motion by Abram for a new trial or judgment *non obstante veredicto*, the trial court held that the jury verdict was unconstitutional[3] and imposed a sentence of life without parole under § 99-19-

---

[2]*Abram* was decided on July 29, 1992, seventeen days after Holly committed the crimes of his conviction. As it merely interpreted § 99-19-107 based upon its plain meaning – and did not ,under that interpretation, elevate the level of punishment one could rationally expect for capital murder under Mississippi law – it did not operate as an *ex post facto* law.

[3]The basis for this ruling was the United States Supreme Court's decision in *Emmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3386 (1982) (holding that in order to impose a sentence of

107. *Id.* The Mississippi Supreme Court, based upon the plain meaning of the language in § 99-19-107, held:

> Although there are no cases addressing the precise application of § 99-19-107, we think it fairly obvious that it is reserved for that event when either this Court or the United States Supreme Court makes a wholesale declaration that the death penalty in general, and/or our own statutory death penalty scheme in particular, is unconstitutional. This section is not reasonably or logically intended for use on a case by case basis by trial courts or this Court in conjunction with *Enmund* analysis.
>
> The only logical alternative once the jury verdict was disregarded would have been to impose a sentence of life imprisonment. *See* MISS. CODE ANN. § 99-19-101(3), 103, 105(5)(b) (Supp.1991).

*Id.* at 1039 (emphasis added).

This interpretation of MISS. CODE ANN. § 99-19-107 remained the law of Mississippi for fifteen years, until the Mississippi Supreme Court decided *Foster v. State*, 961 So.2d 670 (2007). In that case, on facts similar to those in *Abram*, the Mississippi Supreme Court overruled *Abram*, holding that "[t]he plain meaning of the statute is clear; it intends to provide for an alternative sentence for a *person* whose death *sentence* has been deemed unconstitutional." *Foster*, 961 So.2d at 672 (emphasis added). While acknowledging that its ruling in *Foster* was contrary to its previous ruling in *Abram*, the court actually *excised* the critical holding in *Abram* (the "wholesale declaration" requirement) – calling it "extraneous language."[4]

---

death, the state must prove beyond reasonable doubt that the defendant killed, attempted to kill, intended that a killing occur, or contemplated that lethal force would be used). Thus, the trial court's decision to set aside the death sentence was based upon lack of sufficient evidence to support that sentence.

[4]Under a fair and straightforward reading of *Abram*, the "extraneous language" actually contains the *entire holding* of the Mississippi Supreme Court on this issue, as the fact that the *Enmund* decision did not render the death penalty itself unconstitutional drove the decision to impose a sentence of life without parole under MISS. CODE ANN. § 99-19-107.

With no attempt to distinguish *Foster* from *Abram*, the Mississippi Supreme Court simply reversed its position regarding the clarity of § 99-19-107. In *Abram* the court held it "fairly obvious" that the death penalty itself, or Mississippi's implementation of it, must be invalidated to trigger use of § 99-19-107; indeed, the court held that the statute could not "reasonably or logically [be] intended for use on a case by case basis by trial courts or this Court . . . . The only logical alternative once the jury verdict was disregarded would have been to impose a sentence of life imprisonment." *Abram,* 606 So.2d at 1039. Thus, the court in *Abram* held that a contrary ruling would have been unreasonable and illogical.

However, in *Foster*, the court held that, "[t]he language of the statute is clear; it intends to provide for an alternative sentence for a person whose death sentence has been deemed unconstitutional," embracing the position that it previously held to be unreasonable and illogical in *Abram*. *Foster*, 961 So.2d at 672; *Abram*, 606 So.2d at 1039. A state supreme court is the final arbiter regarding the interpretation of that state's laws. *Jackson v. Anderson*, 112 F3d 823 (5th Cir. 1997). For this reason, the Mississippi Supreme Court's construction of § 99-19-107 "is of course valid for the future . . . ." *Bouie*, 378 U.S. at 362. The construction of § 99-19-107 set forth in *Foster* became the law of Mississippi in 2007. The question is whether the Mississippi Supreme Court's retroactive application of MISS. CODE ANN. § 99-19-107 violated Holly's right to due process. The court holds that it did not.

### The State's Decision to Apply MISS. CODE ANN. § 99-19-107 to the Present Case Was Reasonable

"Legislative standards are often couched in general terms purposefully designed to embrace circumstances unforeseen at the time of enactment." 2A Sutherland Statutory

Construction § 48:3 (7th ed.). When the Mississippi legislature passed § 99-19-107, the only method of challenging imposition of the death penalty was by: (1) invalidating the death penalty in its entirety, (2) invalidating a state's scheme for imposing the death penalty, and (3) vacating an individual death sentence due to deficiencies in evidence or procedure. The United States Supreme Court's 2002 decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) was the first time *an entire class of persons* was declared ineligible for the death penalty. Using Holly's interpretation, MISS. CODE ANN. § 99-19-107 would apply only when Mississippi's entire death penalty scheme were declared invalid – leaving those previously sentenced to death to be resentenced to life imprisonment *without* the possibility of parole. However, using Holly's interpretation, it would *not* apply if the Mississippi Supreme Court or the United States Supreme Court declared various classes of persons ineligible for the death penalty – leaving these defendants eligible for the lesser penalty of life imprisonment *with* the possibility of parole. Thus, should the change in state or federal case law affect all defendants, they would receive a sentence of life without parole, but should the change affect only certain classes of defendants, those defendants would receive a sentence of life with the possibility of parole. The court can discern no rational reason for such a difference in treatment. The State's reading of the statute yields a more rational result, and carries out the intent of the statute:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life , and such person shall not be eligible for parole.

MISS. CODE ANN. § 99-19-107. In Holly's case, the death penalty was held to be unconstitutional – as applied to Holly and everyone else who committed a capital crime at an age less than

eighteen years – by the United States Supreme Court. This is a natural reading of the statute which yields a rational result whether the death penalty scheme is invalidated for all defendants – or just certain classes of defendants.

This reading can be squared with *Abram* – and explains the apparently different outcomes in *Abram* and *Foster*, as well. Abram's death sentence was vacated because there was no finding, beyond reasonable doubt, that Abram killed, attempted to kill, intended that a killing occur, or contemplated that lethal force would be used. *Abram*, 606 So.2d at 1039. The Mississippi Supreme Court in *Abram* held that MISS. CODE ANN. § 99-19-107 could not rationally be applied in a case-by-case basis and vacated Abram's sentence of life without parole. *Id.*

In *Foster*, the Mississippi Supreme Court held that § 99-19-107 could be applied to impose a sentence of life without parole upon Foster – after his death sentence was vacated under *Roper v. Simmons, supra* – because he, unlike Abram, belonged to a class of persons who could no longer be executed:

> Where [MISS. CODE ANN. § 99-19-107] governs a defendant's sentence, it plainly authorizes a sentence of life without parole. Therefore, the only question is whether the United States Supreme Court's prohibition on the execution of juvenile offenders[, an entire class of persons,] falls within the scope of this statute.

*Foster*, 961 So.2d at 672. The Mississippi Supreme Court refused to apply § 99-19-107 to Abram because his individual death *sentence* was vacated due to deficiencies unique to his case – and the death *penalty* had not been declared unconstitutional for any *class of persons*. *Abram*, 606 So.2d at 1039. On the other hand, the Mississippi Supreme Court applied § 99-19-107 to Foster because he was simply one among a *class of persons* for whom the death *penalty* had been

-13-

declared unconstitutional – and thus his individual death *sentence* was not overturned due to evidentiary or procedural deficiencies in his individual case.[5] *Foster*, 961 So.2d at 672. The cases can be distinguished on this basis.

"If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue,' it must not be given retroactive effect. *Hall, General Principles of Criminal Law* (2d ed. 1960), at 61." *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697 (1964). Viewed in the manner discussed above, the Mississippi Supreme Court's construction of MISS. CODE ANN. § 99-19-107 was neither "unexpected" nor "indefensible by reference to the law which had been expressed prior to the conduct at issue," *Bouie*, 378 U.S. at 354, especially considering that "[l]egislative standards are often couched in general terms purposefully designed to embrace circumstances unforeseen at the time of enactment." 2A Sutherland Statutory Construction § 48:3 (7th ed.). The statute in question here was narrow enough to put Holly on notice that it could apply to him, but broad enough to encompass the changes in the law adopted by the United States Supreme Court in excluding entire classes of persons from facing the death penalty. As such, the State's application of MISS. CODE ANN. § 99-19-107 to sentence Holly to life imprisonment without the possibility of parole did not violate his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

---

[5]The Mississippi Supreme Court went even further in *Foster*, holding that MISS. CODE ANN. § 99-19-107 applied to every individual defendant whose death sentence "has been deemed unconstitutional." *Foster*, 961 So.2d at 672. As that is not the situation in the present case, the more expansive holding has no effect on this court's ruling.

For these reasons, the petition of William Joseph Holly for a writ of *habeas corpus* under 28 U.S.C. § 2254 will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of March, 2010.

                                                 **/s/ Sharion Aycock**
                                                 **U.S. DISTRICT JUDGE**